IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID K. KAPSHANDY, II                                                    PLAINTIFF

V.                          Civil No. 2:23-cv-02038-PKH-MEF

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, David Kapshandy, II, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (the "Commissioner")

denying his claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial

review, the Court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.        Procedural Background

Plaintiff filed his application for DIB on January 14, 2020, alleging disability since January

1, 2015, due to anxiety, degenerative disk disease ("DDD"), difficulty swallowing, breathing

problems, migraines, carpal tunnel syndrome ("CTS"), sleep apnea, restless leg syndrome

("RLS"), and failed bunion surgeries on both feet.  (ECF No. 7, pp. 77, 102, 210-216, 256-257,

274, 304-305, 315-316).  An administrative hearing was held on December 22, 2021.  (*Id*. at 42-

74).  The Plaintiff was both present and represented by counsel.

Born in March of 1966, Plaintiff was 48 years old on his alleged onset date and possessed

a General Equivalency Diploma.  (ECF No. 7, pp. 76, 101, 275).  He had past relevant work

("PRW") experience as a service writer, coal miner, and supply controller during the 15 years

preceding his alleged onset date.  (*Id*. at 261-268).  And, although it did not rise to the level of

1

substantial gainful activity, the Plaintiff continued to perform some work through 2018.  (*Id*. at 19, 217-233, 283-295).

On January 27, 2022, Administrative Law Judge ("ALJ") Bill Jones determined that the Plaintiff met insured status requirements through June 30, 2022.  (ECF No. 7, p. 19).  The ALJ then identified Plaintiff's DDD, chronic obstructive pulmonary disease ("COPD"), migraines, anxiety, and depression as severe impairments, but concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 20).  Despite his impairments, ALJ Jones found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with no concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation.  (*Id*. at 25).  From a mental perspective, he further concluded the Plaintiff's interpersonal contact must be incidental, the complexity of the tasks must be learned and performed by rote with few variables and little judgment, and the supervision required must be simple, direct, and concrete.  With the assistance of a vocational expert ("VE"), ALJ Jones determined Plaintiff could perform work as hand packager, machine tender, and conveyor off bearer.  (*Id*. at 35).

The Appeals Council denied Plaintiff's request for review on January 26, 2023.  (ECF No. 7, pp. 6-11).  Plaintiff subsequently filed this action on March 17, 2023.  (ECF No. 3).  Both parties have filed appeal briefs (ECF Nos. 9, 11), and the matter is ready for Report and Recommendation.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his age, education, and experience.  *See* 20 C.F.R. § 404.1520(a)(4).  The fact finder only

considers Plaintiff's age, education, and work experience in the light of his RFC if the final stage

of the analysis is reached.  20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion

Of particular concern to the undersigned is the ALJ's determination that the Plaintiff could

perform a range of medium work with environmental restrictions.  RFC is the most a person can

do despite that person's limitations.  20 C.F.R. § 404.1545.  Although a disability claimant has the

burden of establishing his RFC, the ALJ must base said RFC on all relevant evidence in the record,

to include medical records, the perceptions of treating physicians and others, and the claimant's

subjective description of his impairments.  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010);

*Vossen*, 612 F. 3d at 1016; and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations

resulting from symptoms such as pain are also factored into the assessment.   20 C.F.R. §

404.1545(a)(3).   The United States Court of Appeals for the Eighth Circuit has held that a

Plaintiff's RFC is a medical question.  *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700,

704 (8th Cir. 2001).   Therefore, it must be supported by medical evidence that addresses the

Plaintiff's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.

2012).

The record presently before this Court makes clear that the Plaintiff has PRW as a coal

miner.  (ECF No. 7, pp. 45-46, 261-268).  He worked in the mine for approximately four years

between 2010 and 2015.  (*Id*.).  According to the American Lung Association, coal miners are

known to suffer from a lung impairment known as black lung disease, resulting from the inhalation

of coal dust into the lungs.  *See* American Lung Association, Coal Worker's Pneumoconiosis

(Black Lung Disease), *at* https://www.lung.org/lung-health-diseases/lung-disease-lookup/black-

lung#:~:text=Coal%20workers'%20pneumoconiosis%20(CWP),most%20common%20among%2

0coal%20miners (last accessed January 24, 2024).  Continued inhalation of coal dust leads to

scarring in the lungs, impairing the individual's ability to breathe.  *Id.*

Plaintiff began complaining of chest pressure and a chronic cough in July 2015, shortly

after leaving the mine.  (ECF No. 7, pp. 438-457).  X-rays of his chest showed asymmetric right

upper lobe opacity with features of interstitial infiltrate, opacity partially contiguous with the right

hilar region, and benign granulomatous calcification.  (ECF No. 7, p. 457).  As interpreted by

radiologist, Dr. Kenneth Kraudel, the results suggested chronic obstructive pulmonary disease with

asymmetric fibrosis and right upper lobe opacity.  (*Id.*).  Following medical therapy, Dr. Kraudel

recommended a follow-up examination and CT scan of the chest.  (*Id.*).

Three months later, the Plaintiff presented in the emergency room ("ER") with complaints

of coughing up blood and abdominal pain.  (ECF No. 7, pp. 458-478).  A CT scan of his chest,

abdomen, and pelvis showed a confluent region of opacity extending from the right apex evolving

two cavitary lesions and right hilar adenopathy.  (*Id.* at 477-478).  As per the ER physician's

recommendation that he follow-up with his primary care doctor, Dr. Scott McLain ordered a

follow-up CT scan of the Plaintiff's thorax in July 2016.  (ECF No. 7, pp. 540-543).  The scan

showed a three-millimeter ground glass opacity in the left upper lobe, a right upper lobe calcified

granuloma, right upper lobe pulmonary scarring, left basilar pulmonary scarring, and mild diffuse

emphysematous changes.  (ECF No. 7, pp. 484-485).  The following month, Dr. McLain diagnosed

chronic obstructive pulmonary disease and emphysema and prescribed Symbicort and Combivent.

(ECF No. 7, pp. 535-538).

In November 2016, the Plaintiff received treatment at an Urgent Care Clinic for complaints

of chest pain and shortness of breath.  (ECF No. 7, p. 527).  An exam revealed occasional

inspiratory wheezing, focal tenderness to palpation over the left chest wall, and mild tenderness to palpation over the right chest wall.  Dr. Joyce Bunt ordered chest x-rays which ultimately showed fibrotic change in the right upper lobe and a new nine-millimeter calcified granuloma overlying the seventh rib.  (*Id*. at 483).  The Plaintiff was administered two nebulizer treatments.

A follow-up CT scan of his thorax in February 2017 confirmed airspace disease of the right upper lung with stable appearing lingula.  (ECF No. 7, pp. 481, 523, 1158-1160; ECF No. 7-1, pp. 62-64).  Continued surveillance was recommended.  (*Id*.).  The following month, he advised Dr. McLain that his breathing was stable on the Symbicort and Combivent.  (ECF No. 7, pp. 519-523).

During a mental evaluation with Dr. Stephen Vincent in May 2017, the Plaintiff reported shortness of breath with exertion.  Dr. Vincent noted his breathing to be somewhat labored, especially when speaking in lengthy sentences.  (ECF No. 7, pp. 406-410).  Dr. Vittal Chapa also noted mild wheezing when conducting a general physical exam of the Plaintiff in June of the same year.  (ECF No. 7, pp. 412-423, 429-437).  Although pulmonary function tests were performed, the record does not contain an interpretation of these studies.  (*Id*.).  While test results appear to show a moderate obstructive defect evidenced by a forced expiratory capacity in one second ("FEV 1")/forced vital capacity ("FVC") ratio measuring 62 percent of the expected ratio and an FEV 1 value 66 percent of expected, this is an issue that requires additional medical development.  *See* American Academy of Family Physicians, *A Stepwise Approach to the Interpretation of Pulmonary Function Tests*, *at* https://www.aafp.org/pubs/afp/issues/2014/0301/p359.html (last accessed January 24, 2024).

The Plaintiff reported continued shortness of breath in November 2017, despite continuing the medications previously prescribed to treat his COPD.  (ECF No. 7, pp. 509-513).  And, in April 2018, he was again treated for chest pain and pressure with shortness of breath.  (ECF No. 7, pp.

595-633, 980-988; ECF No. 7-1, pp. 31-32).  Because the pain was responsive to Nitroglycerin, the doctor admitted him to telemetry.  Following an uneventful overnight stay, Plaintiff was released with an appointment for an outpatient stress test; however, the Plaintiff was unable to complete the stress test due to shortness of breath.  (ECF No. 7, pp. 957-959, 1146-1148; ECF No. 7-1, pp. 29-31).  His pulse oximetry values were noted to be between 83 and 91 percent, with normal values ranging between 95 and 100 percent.  *See* Cleveland Clinic, *Blood Oxygen Level*, at   https://my.clevelandclinic.org/health/diagnostics/22447-blood-oxygen-level   (last   accessed January 23, 2024).  And, the following month, he began nocturnal home oxygen use.  (ECF No. 7, p. 942).  At that time, x-rays showed a stable calcified nodule in the right lung and minor right-sided scarring.  (*Id*. at 703).

A diagnostic polysomnogram completed in December 2019 showed evidence of obstructive sleep apnea and periodic limb movements during sleep.  (ECF No. 7, pp. 670-692; ECF No. 7-1, pp. 26-27, 989-997).  He was prescribed a C-PAP machine to use at night.  (ECF No. 7-1, pp. 217-218, 858-859).

In February 2020, an Interviewer with the Social Security Administration conducted a face-to-face interview with the Plaintiff.  (ECF No. 7, pp. 269-272).  The interviewer noted the Plaintiff to be well groomed and appropriately dressed, but Plaintiff had difficulty breathing and coughed regularly throughout the interview.  (*Id*.).

The ALJ rejected Plaintiff's home oxygen allegations because he denied active respiratory symptoms in May 2020; however, respiratory therapy notes dated May 7, 2020, reveal that the Plaintiff reported shortness of breath with activity and requested an evaluation for oxygen use with activity.  (ECF No. 7-1, pp. 103-104).  Due to the COVID pandemic, the Plaintiff opted not to go

into the clinic for an evaluation, stating that he was using home oxygen at night and whenever he felt he needed it.  (ECF No. 7-1, pp. 236-238, 877-879).

The ALJ also states that the Plaintiff's December 2020 pulmonary function test ("PFTs") results were within normal limits.  Unfortunately, neither the ALJ nor the Court have the benefit of an analysis of the Plaintiff's PFT results, as they contain no interpretation from the testing pulmonologist.  The Court notes that with an FEV 1/FVC ratio of 51 percent of the expected value, an FEV 1 value approximately 38 percent of the predicted value, and a FVC value approximately 60 percent of the expected value, these results do not appear to be normal.  (ECF No. 7-1, pp. 137-143).  *See* American Academy of Family Physicians, *A Stepwise Approach to the Interpretation of Pulmonary Function Tests*, at https://www.aafp.org/pubs/afp/issues/2014/0301/p359.html (last accessed January 24, 2024).  However, unlike the ALJ, this Court will not play doctor.  *Finch v. Astrue*, 547 F. 3d 933, 938 (8th Cir. 2008) (holding ALJ must not substitute his opinions for those of a physician).

The ALJ also ignores the fact that a June 2021 six-minute home oxygen walk test revealed a baseline oxygen saturation rate of 94 percent, with 91 percent after one minute of walking, and 89 percent after two minutes of walking, all on room air with no oxygen supplementation.  (ECF No. 7-1, pp. 751-752).  In fact, the Plaintiff was not even able to make it the full six minutes due to shortness of breath.  (*Id.*).

Further, an August 2021 CT of the Plaintiff's chest showed calcified precarinal and right hilar nodes, a few rounded ground glass opacities in the left upper lobe, scarring and traction bronchiectasis in the posterior segment of the right upper lobe, and a solitary calcified granuloma in the middle right lobe.  (ECF No. 7-1, p. 366).

While it is true that the Plaintiff continued to smoke despite his physicians' recommendation that he stop, this does not obviate the fact that he has a lung impairment requiring home oxygen that would likely impact his ability to perform work at all exertional levels.  As such, we recommend remand to allow the ALJ to develop the record further regarding the Plaintiff's lung impairment.  Because the record does not contain an interpretation of the Plaintiff's PFTs, on remand, the ALJ should be directed to order a consultative pulmonology exam, complete with PFTs and an interpretation of those results by a pulmonologist.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding further development of record is required when crucial issue is underdeveloped, or the available evidence does not provide an adequate basis to make an informed decision on the claim).

### IV.    Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of January 2024.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE

9